IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

---

| | |
|---|---|
| CLAUDIA SKEEN,<br><br>           Plaintiff,<br><br>     v.<br><br>RITE AID CORPORATION and STANDARD INSURANCE COMPANY,<br><br>           Defendants. | 2:08-cv-03177-GEB-EFB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT |

           Defendants Rite Aid Corporation ("Rite Aid") and Standard Insurance Company ("Standard") filed a motion for summary judgment on September 24, 2009, in which they seek to have upheld their denial of Plaintiff Claudia Skeen's application for Long Term Disability ("LTD") benefits.  On October 19, 2009, Defendants also filed a motion to strike declarations Skeen submitted in her Opposition to Defendants' motion.

           Skeen was a Rite Aid store manager, and was covered by Rite Aid Group Policy 641335-B (the "Policy") which Standard issued and insured.  (Statement of Undisputed Facts ("SUF") ¶ 5.)  The Policy provides Skeen was entitled to LTD benefits if as a result of physical disease or injury she was unable to perform with reasonable continuity the "material duties of [her store manager] occupation."  (Administrative Record ("AR") 8.)  The Policy also required Skeen to be continuously disabled for "the benefit waiting period" of 91 days before LTD benefits became payable.  (AR 22, 40.)  It is undisputed that Skeen was disabled with Rheumatoid Arthritis ("RA") from May 25,

2005 to June 22, 2005. However, to be eligible for LTD benefits she had to be continuously disabled from May 25, 2005 through August 23, 2005. Standard denied Skeen's LTD benefits claim since it found that as of June 22, 2005 Skeen's symptoms did not prevent her from returning to work. Skeen requested that the Administrative Review Unit ("ARU") review this decision. The ARU considered the initial denial and additional medical records submitted by Skeen and concluded that the decision to deny Skeen's claim was correct since Skeen was not continuously disabled through the benefit waiting period.

        Skeen subsequently filed this lawsuit in state court alleging breach of contract and breach of the implied covenant of good faith and fair dealing claims, based on Defendants' failure "to provide [LTD] benefits to [her] pursuant to Group Policy 641335-B issued [by Standard] to Rite Aid Corporation." (Defs.' Notice of Removal, Ex. 1.) Defendants removed this case from state court under 28 U.S.C. §§ 1331(a) and 1441(a), on the ground that the Employee Retirement Securities Act of 1974 ("ERISA"), 29 U.S.C. § 1001, completely preempts Plaintiff's state claims. (Defs.' Notice of Removal 2:9-14.).

        A case in which disability insurance benefits are sought under an ERISA-regulated employee benefit plan is "within the scope of the civil enforcement provisions of [ERISA and is] removable to federal court." Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004) (internal quotations and brackets omitted). ERISA-regulated employee benefit plans include "any plan . . . established by an employer . . . for the purpose of providing for its participants . . . benefits in the event of . . . disability . . . ." 29 U.S.C. § 1002(1), (3). Here, Skeen seeks LTD disability benefits under her employer's ERISA-

2

1 regulated employee benefit plan.  Therefore, ERISA preempts her
2 complaint and an ERISA analysis is used to decide the summary judgment
3 motion.

### I.  Background

On Wednesday May 25, 2005, Skeen met with her Rheumatologist, Doctor Paul Sussman.  At this meeting, she told Dr. Sussman "she has been having nausea and vomiting following the Sunday methotrexate dose" of medication and that "she is under quite a bit of work related stress and is having increased RA symptoms with pain in her hips and knees, prolonged AM stiffness and functional disability." (SUF 2; AR 252.)  Dr. Sussman conducted a physical examination and noted the following conditions: "increased RA symptoms with pain in her hips and knees, prolonged AM stiffness and functional disability . . . [;] right hand shows trace[s of] puffiness in a nonacute fashion.  Elbows lack a few degrees of full extension.  No synovitis. Knees, discomfort on ROM, trace right popliteal fullness."  (AR 252.) Dr. Sussman gave Skeen a note excusing her "from work for the next four weeks," reduced her Methotrexate dosage, and wrote "consider disability."  (AR 252.)

Standard informed Skeen in a letter dated June 8, 2005, that it approved her claim for a short term leave of absence for an initial three weeks, through June 15, 2005, but that additional information would be needed to continue coverage for the remainder of the 90-day short term disability period.  (AR 83-84.)

Skeen was again examined by Dr. Sussman on June 22, 2005. (AR 202, 248; SUF 4.)  He noted, "Now that she has been off work, she is feeling somewhat better." (AR 248.)  "The reduction in methotrexate has lessened her nausea on Monday and Tuesday, but is to

the point [] where [it] is now tolerable." (AR 248.)  He further noted, "Hands, decreased puffiness of the right hand.  Wrists, no swelling, good range of motion.  Elbows, lack a few degrees of full extension.  Knees show no swelling." (AR 248.)  He wrote under "Plan" to "Continue Disability for three more months." (AR 248.)

Dr. Sussman completed a Short Term Disability Attending Physician Statement dated June 22, 2005, in which he requested an additional three months of disability for Skeen and stated October 1, 2005 was the date on which Skeen planned to return to work.  (AR 107.)  Standard informed Skeen in a letter dated July 1, 2005, that her short term leave of absence ended August 23, 2005, and that since she did not plan on returning to work until October 1, she had initiated a claim for LTD benefits.  (AR 86.)  Standard again acknowledged it had received Skeen's application for LTD benefits in a letter dated July 15, 2005, and stated it planned on reviewing her claim.  (AR 54.)

Skeen again saw Dr. Sussman on August 1, 2005.  (AR 247.)  Dr. Sussman noted the following: "Overall, she is about the same as last visit.  She has had no interval acute flare activity.  No prominent AM stiffness.  She is complaining of knee discomfort, but no swelling.  From time to time she will take ibuprofen 800 mg averaging once or twice a week."  He also noted: "Hand shows no swelling.  She has good function of wrist and no swelling.  Elbows lack a few degrees of full extension.  Knees, no swelling." (AR 247.)

Standard's claim analyst solicited the opinion of Dr. Ronald Frabeck, a Rheumatology physician consultant, to assist in the decision whether to grant Skeen's LTD benefit claim.  Dr. Fraback reviewed Dr. Sussman's records on August 25, 2005, and submitted a report concluding:

4

> In summary, this woman has mild to moderate rheumatoid arthritis. At the time she ceased work she was having more joint pain, as well as side effects from her medication. By 6/22/05 she appears to have improved significantly. Her nausea was tolerable. A note dated 8/1/05 indicated that she was unchanged. On the basis of this, I think that she should have been able to return to her usual light level occupation by approximately 6/22/05 and ongoing. Her prognosis is fair. She may worsen with time and require additional medication.

(AR 238.) Based on Dr. Frabeck's report and Skeen's medical records from Dr. Sussman, Standard's claim analyst determined that Skeen was not eligible for LTD benefits.

Standard informed Skeen that her claim for LTD benefits was denied in a letter dated September 8, 2005, because as of June 22, 2005 her symptoms had lessened and did not prevent her from returning to work. (AR 143-146.) The letter included the statement: "If there are medical reasons why you could not work after June 22, 2005, please have your physician complete the enclosed Attending Physician's Statement and return it to us." (AR 145.) However, this letter was returned to Standard on September 28, 2005 because Skeen had moved. (AR 142; Skeen Decl. ¶ 3.)

On September 26, 2005, Skeen called Standard regarding her claim and spoke with Standard employee Mary Jane Clarke. (AR 176.) Skeen told Clarke she had not received the letter and that her address had recently changed. (AR 176.) Clarke informed Skeen her claim had been denied, updated Skeen's address, told Skeen she could appeal the decision, and that she "could" resend Skeen a copy of the letter. (AR 176.) It is disputed whether the September 8, 2005 letter was resent to Skeen on September 26, 2005.

//
//

1           Subsequently, Skeen responded to a customer service survey
2 in which she stated she did not understand why her claim was denied
3 and why it took two months to decide her claim.  (SUF 14.)  Standard
4 responded in a letter dated March 6, 2006, in which Standard informed
5 Skeen of her ability to request review of the denial decision and that
6 Skeen could submit additional information to be considered in the
7 review.  (AR 140.)  Standard enclosed the September 8, 2005 letter
8 denying Skeen's LTD benefits with the March 6, 2006 letter.  (AR 140.)
9           Skeen retained counsel who notified Standard of Skeen's
10 intent to appeal the LTD claim and requested a copy of all documents
11 pertaining to the claim in a letter dated October 5, 2007.  (AR 139.)
12 Skeen's attorney also stated in that letter: "There are substantial
13 medical records which we are currently obtaining which establish that
14 she has long term disability."  (AR 139.)
15           Standard responded in a letter dated October 11, 2007, by
16 requesting additional information required to be sent within the next
17 45 days, including any Social Security Awards Skeen had received, and
18 an authorization to release Skeen's medical records to her attorney.
19 (AR 59.)  Standard received the "Authorization to Release Information"
20 on November 26, 2007.  (AR 63.)  Standard sent Skeen's attorney a
21 letter dated November 30, 2007, in which it enclosed a copy of Skeen's
22 LTD Benefit claim file.  (AR 63.)  Standard also sent Skeen's attorney
23 letters in December 2007 and January 2008 in which it requested any
24 additional medical records.  (AR 124.)
25           Skeen enclosed with a letter dated February 12, 2008, nearly
26 600 pages of medical records from six health care providers for review
27 in consideration of her LTD claim.  (AR 104-105; 287-880.)  However,
28 none of the doctors in the referenced medical records met with Skeen

1  during the benefit waiting period of May 25, 2005 through August 23,
2  2005, except Dr. Sussman.  (SUF 22.)  Standard notified Skeen in a
3  letter dated February 22, 2008, that her file was sent to the ARU for
4  review of the LTD benefit denial decision.  (AR 103.)

5       Standard hired Rheumatologist Doctor David S. Knapp to
6  review all medical records Skeen submitted in February 2008, for the
7  purpose of assisting the ARU in its review of the LTD benefit denial
8  decision.  (AR 226.)  Dr. Knapp summarized Skeen's medical records and
9  concluded that as of May 24, 2005:

> Ms. Skeen did have restrictions and limitations when she ceased work on 5/24/05. The records document a flare up of rheumatoid arthritis symptoms and intolerance of medication characterized as nausea and vomiting for which she was released from work for 4 weeks. Examination revealed chronic swelling of the right hand, knee pain with range of motion and right knee fullness. Elbow flexion deformities without synovitis are noted. In this clinical setting the claimant was not able to continue her light level work duties.

(AR 228.)  He further concluded, however:

> The restrictions and limitations would not have prevented the claimant from performing a light level occupation through 8/24/05 and beyond. The subsequent records document clinical improvement as of 6/22/05 with unremarkable examinations. No clinically significant orthopedic or medical impairments are noted from 6/22/05 onward that would result in restrictions and limitations for a light level occupation through 8/24/05.

(AR 229.)  Dr. Knapp also stated: "The additional records, while documenting multiple intercurrent medical problems of a limited nature, do not support clinically significant progression of the claimant's rheumatoid arthritis."  (AR 229.)

    Standard notified Skeen in a letter dated April 18, 2008, that the ARU had completed its review and concluded that the decision to deny Skeen's LTD claim was correct since Skeen was not continuously

disabled through the benefits waiting period.  (AR 94-98.)  The April 18 letter also discussed Skeen's medical records, the physician consultants' findings, and informed Skeen that "this concludes the administrative review process" and that she had "a right to file suit under Section 502(a) of [ERISA] or state law, whichever is applicable."  (AR 97.)

## II.  Standard of Review

The parties agree this case is governed by the abuse of discretion standard.  (Def.'s Mot. for Summ. J. 10:6-7; Plt.'s Opp'n 2:16-18.)  "[A] denial of benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Burke v. Pitney Bowes, Inc. Long Term-Disability Plan, 544 F.3d 1016, 1023 (9th Cir. 2008).  Where the plan "does grant such discretionary authority, we review the administrator's decision for abuse of discretion."  Saffon v. Wells Fargo & Co. Long Term Disability Plan, 522 F.3d 863, 866 (9th Cir. 2008).  Here, Group Policy 641335-B grants the following discretionary authority to the administrator of the Policy:

> Except for those functions which the [Plan] specifically reserves to the Policyowner or Employer, we have full and exclusive authority to control and manage the [Plan], to administer claims, and to interpret the [Plan] and resolve all questions arising in the administration, interpretation, and application of the [Plan]. Our authority includes, but is not limited to . . . The right to determine . . . eligibility for benefits . . . .

(AR 38.)  Identical language has been found to "clearly confer[] discretion on Standard to decide whether a claimant is disabled." Bendixen v. Standard Ins. Co., 185 F.3d 939, 943 (9th Cir. 1999),

overruled on other grounds by Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 631 (9th Cir. 2009). In Mountour, the court explained:

> The manner in which a reviewing court applies the abuse of discretion standard, however, depends on whether the administrator has a conflicting interest. In the absence of a conflict, judicial review of a plan administrator's benefits determination involves a straightforward application of the abuse of discretion standard. In these circumstances, the plan administrator's decision can be upheld if it is grounded on any reasonable basis. In other words, where there is no risk of bias on the part of the administrator, the existence of a single persuasive medical opinion supporting the administrator's decision can be sufficient to affirm, so long as the administrator does not construe the language of the plan unreasonably or render its decision without explanation. Commonly, however, the same entity that funds an ERISA benefits plan also evaluates claims, as is the case here. Under these circumstances, the plan administrator faces a structural conflict of interest: since it is also the insurer, benefits are paid out of the administrator's own pocket, so by denying benefits, the administrator retains money for itself. Application of the abuse of discretion standard therefore requires a more complex analysis. Simply construing the terms of the underlying plan and scanning the record for medical evidence supporting the plan administrator's decision is not enough, because a reviewing court must take into account the administrator's conflict of interest as a factor in the analysis.

Id. at 630 (citations and quotations omitted).

Here, the parties agree that Standard operates under a structural conflict of interest since it both decides whether claimants will receive benefits and is responsible for paying benefits when they are awarded. (Def.'s Mot. for Summ. J. 10:6-9.) The presence of a structural conflict of interest does not change the standard of review, but rather it is one of "numerous case-specific factors" weighed when determining whether the plan administrator

1 abused its discretion in denying benefits. Montour, 588 F.3d at 630.
2 "The weight the court assigns to the conflict factor depends on the
3 facts and circumstances of each particular case." Id. at 631. Courts
4 are to apply the level of skepticism appropriate to the egregiousness
5 of the particular conflict of interest:

> The level of skepticism with which a court views a
> conflicted administrator's decision may be low if a
> structural conflict of interest is unaccompanied,
> for example, by any evidence of malice, of self-
> dealing, or of a parsimonious claims-granting
> history. A court may weigh a conflict more heavily
> if, for example, the administrator provides
> inconsistent reasons for denial, fails adequately
> to investigate a claim or ask the plaintiff for
> necessary evidence, fails to credit a claimant's
> reliable evidence, or has repeatedly denied
> benefits to deserving participants by interpreting
> plan terms incorrectly or by making decisions
> against the weight of evidence in the record.

Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 968-69 (9th Cir. 2006) (citations omitted).

Skeen argues Defendants committed procedural irregularities by failing to engage in a "meaningful dialogue" with Skeen and by relying on an incomplete record in making the LTD benefit denial decision. Procedural irregularities made in connection with a denial of benefits decision affect the standard of review in an ERISA case. When an administrator commits "wholesale and flagrant" procedural violations, courts are to apply a de novo standard in reviewing the administrator's decision. Abatie, 458 F.3d at 972. Procedural violations that are less than "wholesale and flagrant" constitute a factor in determining whether a plan administrator abused its discretion. Id. To avoid committing procedural violations, "[a]n administrator must provide a plan participant with adequate notice of

10

the reasons for denial, and must provide a full and fair review of the participant's claim." Id. at 974.

Skeen argues she never received the September 8, 2005 letter denying her claim and therefore she was never advised that her medical evidence was considered insufficient "until the final denial letter on appeal." It is undisputed that the September 8, 2005 letter was returned to the sender because Skeen had recently moved. (AR 142; Skeen Decl. ¶ 3.) However, it is also undisputed that the claims administrator told Skeen over the phone on September 26, 2005 that her claim had been denied and that the letter could be resent. (AR 176.) The record shows the letter was resent on March 2, 2006 (AR 140), November 30, 2007 (AR 63), and January 29, 2008 (AR 67). In each of these letters, Skeen was advised that she was not eligible for benefits because she was not disabled during the 91-day benefit waiting period of May 25, 2005 through August 23, 2005. Each letter sets forth the terms of her Group Policy, a summary of her meetings with Dr. Sussman, and a request for any additional information that would be helpful in reviewing the decision. The letters also state, "If there are medical reasons why you could not work after June 22, 2005, please have your physician complete the enclosed Attending Physician's Statement and return it to us." Further, each letter notified Skeen of her right to request a review of the decision, and the right to file suit if the decision was upheld. The record also reveals in October 2007, Skeen's attorney notified Standard of Skeen's intent to request review of the decision to deny benefits; and that Standard subsequently sent letters to Skeen's attorney requesting any additional medical records. When those medical records were received in February 2008, they were reviewed by Dr. Knapp. Therefore, the

record does not show that Standard committed a procedural irregularity in its handling of Skeen's claim.

Skeen also challenges the completeness of the administrative record relying on her declaration and her attorney's declaration, which are attached to Skeen's Opposition to Defendants' motion for summary judgment. Defendants move to strike these declarations since they were not before the claims administrator when the LTD denial decision was made and are outside the administrative record.

Under an abuse of discretion review of the administrator's decision, the court is generally limited to review of the administrative record. <u>Abatie</u>, 458 F.3d at 970. An exception to this general rule is when the court considers evidence outside the administrative record to determine the appropriate weight to assign a conflict of interest:

> The district court may, in its discretion, consider evidence outside the administrative record to decide the nature, extent, and effect on the decision-making process of any conflict of interest; the decision on the merits, though, must rest on the administrative record once the conflict (if any) has been established, by extrinsic evidence or otherwise.

<u>Id.</u>

Both Skeen and her attorney declare the administrative record is incomplete since it does not contain records of various phone conversations or Skeen's customer service survey to which Standard replied in a letter dated March 6, 2006. (AR 140-141.) Additionally, attached as an exhibit to Skeen's attorney's declaration is the April 15, 2009 decision in Skeen's Social Security Hearing, in which the Administrative Law Judge ("ALJ") makes a "fully favorable decision" based on Skeen's "period of disability and disability

insurance benefits application filed on December 13, 2006." (Cooke Decl., Ex. 1.) The ALJ concluded:

> I found you disabled as of May 23, 2005 because of Rheumatoid Arthritis, Fibromyalgia, Cervical Spine Degenerative Disc Disease, COPD, Depression and Obesity so severe that you are unable to perform any work existing in significant numbers in the national economy.

(Cooke Decl., Ex. 1.)

The decision in the Social Security Hearing could not have been before the claims administrator since it was made over one year after the ARU found the decision denying Skeen's LTD benefits was correct. Skeen argues this social security evidence "is significant from the standpoint of what the medical evidence supports." (Plt.'s Opp'n to Mot. to Strike 2:16-18.) This argument does not pertain to the weight to be given to Standard's conflict of interest. Nor do the averments in the proffered declarations Standard seeks to strike support Skeen's argument that the Administrative Record is incomplete. Therefore, the Court's review is limited to the administrative record, and the declarations are stricken.

Since Skeen's evidence does not support drawing a reasonable inference that Standard gave inconsistent reasons for its denial of her claim, failed to investigate her claim, failed to ask for necessary evidence, or failed to credit competent medical evidence in the record, Standard's conflict of interest merits only a "low" level of skepticism. See Abatie, 458 F.3d at 967, 968-69.

### III. Motion for Summary Judgment

"An abuse of discretion is found only when there is a definite conviction that the [decisionmaker] made a clear error of judgment in its conclusion upon weighing relevant factors." Hummell

13

v. S.E. Rykoff & Co., 634 F.2d 446, 452 (9th Cir. 1980). Factors frequently considered in the ERISA context include:

> the quality and quantity of the medical evidence, whether the plan administrator subjected the claimant to an in-person medical evaluation or relied instead on a paper review of the claimant's existing medical records, whether the administrator provided its independent experts with all of the relevant evidence, and whether the administrator considered a contrary [Social Security] disability determination, if any.

Montour, 588 F.3d at 630.

Here, Standard could reasonably have concluded, based on Dr. Sussman's reports on June 22 and August 1, 2005 that Skeen was able to return to work. Skeen has submitted evidence showing that since 2005 she has suffered from various conditions including RA, but she has not provided any evidence in the administrative record that she was disabled from June 22, 2005 through August 25, 2005. Further, Standard was not obligated to follow Dr. Sussman's recommendation that Skeen remain on disability beyond August 2005. See, e.g., Toth v. Automobile Club of Cal. Long Term Disability Plan, 2005 WL 1877150, *30 (C.D. Cal. 2005) (affirming denial of benefits despite Doctor's contrary opinion supported by "only minor objective findings" in favor of alternative conclusion supported by objective findings).

Standard's conclusion that Skeen was not disabled beyond June 22, 2005 is supported by Dr. Sussman's medical records which indicate that other than Skeen's elbows lacking "a few degrees of full extension," Skeen was healthy enough to return to work. (AR 248.) Dr. Sussman's notes from his August 1 meeting with Skeen state Skeen "is about the same as [her] last visit." (AR 247.) Additionally, Skeen's visits with Dr. Sussman on September 13, 2005, November 7,

2005, and January 23, 2006 yielded "unremarkable examinations." (AR 226.)

Further, Dr. Shapiro, the Rheumatologist who replaced Dr. Sussman as Skeen's treating physician in April 2006, stated he did not believe RA was disabling Skeen. He summarized, "I know she has rheumatoid arthritis but I believe fibromyalgia is the cause of her current and increased musculoskeletal pain." (AR 485.) Finally, Standard's denial decision was also based on Dr. Knapp's independent review of all of Skeen's medical records. Dr. Knapp concluded, "No clinically significant orthopedic or medical impairments are noted from 6/22/05 onward that would result in restrictions and limitations for a light level occupation through 8/24/05." (AR 229.)

Therefore, the administrator did not abuse of its discretion in denying Skeen LTD benefits.

### VI.  Conclusion

For the stated reasons, Defendants' motion for summary judgment is GRANTED.

Dated:  January 12, 2010

_____
GARLAND E. BURRELL, JR.
United States District Judge